COURT OF APPEALS OF VIRGINIA


Present:  Chief Judge Moon, Judge Annunziata
          and Senior Judge Hodges
Argued at Richmond, Virginia


ROBERT A. BRUCE, s/k/a
 ROBERT ALLISON BRUCE

v.     Record No. 0273-94-2     MEMORANDUM OPINION[*] BY
                                JUDGE WILLIAM H. HODGES
COMMONWEALTH OF VIRGINIA             FEBRUARY 13, 1996


        FROM THE CIRCUIT COURT OF PRINCE EDWARD COUNTY
            James M. Lumpkin, Judge Designate

        Robert N. Johnson (Anne M. Johnson; Robert N.
        Johnson, Jr.; Robert N. & Anne M. Johnson, Inc.,
        on briefs), for appellant.

        Thomas C. Daniel, Assistant Attorney General
        (James S. Gilmore, III, Attorney General, on
        brief), for appellee.


    On appeal from his convictions of first degree murder and
use of a firearm in the commission of a felony, Robert Bruce
contends that the trial judge erred in (1) denying Bruce's motion
to excuse a prospective juror for cause; (2) overruling Bruce's
motion to strike the evidence at the end of the Commonwealth's
case; (3) denying Bruce's renewed motion to strike the
Commonwealth's evidence at the conclusion of the case; (4)
denying Bruce's motion for a mistrial; (5) denying Bruce's motion
to set aside the verdict; and (6) denying Bruce's written
post-trial motion for a mistrial.

--------

[*]Pursuant to Code § 17-116.010 this opinion is not
designated for publication.

<u>The Juror Issue</u>
"The standard to be applied . . . in determining whether to retain a venireman on the jury panel is whether his answers during <u>voir</u> <u>dire</u> . . . indicate . . . something that 'would prevent or substantially impair the performance of his duties as a juror in accordance with his instructions and his oath.'"

Whether a prospective juror should be excused for cause is a matter resting within the sound discretion of the trial court, and its action in refusing to excuse a particular venireman will not be disturbed on appeal unless the refusal amounts to manifest error.

<u>Yeatts v. Commonwealth</u>, 242 Va. 121, 134, 410 S.E.2d 254, 262 (1991) (citations omitted), <u>cert.</u> <u>denied</u>, 503 U.S. 946 (1992).

Bruce asks us to adopt a <u>per</u> <u>se</u> rule disqualifying potential jurors in criminal cases whose spouses are law enforcement officials who have participated in the investigation of the crime that is the subject of the trial.  We decline to adopt such a rule.

The trial judge found nothing in the <u>voir</u> <u>dire</u> answers of Jeanne Williams to indicate that her performance would be impaired if she was selected as a juror, and we find nothing in the record to show an abuse of discretion amounting to manifest error in the trial judge's refusal to excuse her for cause.

Williams indicated that she knew her husband was the only state trooper at the scene of the death.  However, Williams also stated that her husband "discusses nothing job-related with me, nothing.  I'm more ignorant than people out on the street." Williams said she had not formed an opinion as to the guilt or

2

innocence of Bruce. When asked whether she could listen to the evidence and make up her own mind, Williams responded, "I think I could."

Considering Williams' assurances that she could decide the case based on the evidence, and considering Williams' manifestation that she had obtained no information about the case from her husband, we conclude that Bruce has shown no "manifest error" in the trial judge's retention of Williams as a prospective juror. See Stewart v. Commonwealth, 245 Va. 222, 235, 427 S.E.2d 394, 403, cert. denied, 114 S. Ct. 143 (1993); Satcher v. Commonwealth, 244 Va. 220, 237, 421 S.E.2d 821, 831 (1992), cert. denied, 113 S. Ct. 1319 (1993).

### The Sufficiency of the Evidence

"On appeal, we review the evidence in the light most favorable to the Commonwealth, granting to it all reasonable inferences fairly deducible therefrom." Martin v. Commonwealth, 4 Va. App. 438, 443, 358 S.E.2d 415, 418 (1987). Where the evidence is entirely circumstantial

> "all necessary circumstances proved must be consistent with guilt and inconsistent with innocence and must exclude every reasonable hypothesis of innocence. The chain of necessary circumstances must be unbroken. The circumstances of motive, time, place, means, and conduct must all concur to form an unbroken chain which links the defendant to the crime beyond a reasonable doubt."

Boothe v. Commonwealth, 4 Va. App. 484, 492, 358 S.E.2d 740, 745 (1987) (citation omitted).

The evidence supported the conclusion that the victim did

3

not commit suicide and that Bruce murdered the victim.  On December 11, 1991, the victim was found in her home with a fatal bullet wound in her head.  Bruce and the victim had been married since 1975.  Dr. Jeffrey Fracher, the victim's psychologist, testified that the victim and appellant were having marital difficulties, and that the victim was planning to leave her husband on December 20, 1991.  She had hired a lawyer and, according to Dr. Fracher, she was "looking forward to moving out and moving on."  Dr. Fracher, who was experienced in recognizing suicidal inclinations, testified the victim did not exhibit suicidal thoughts.  Dr. Fracher also stated that the victim's activities during the week before her death were "totally inconsistent with a suicide profile."  These activities included attending a conference, arranging for a babysitter on the day she was to take the graduate admissions examination, and meeting her lawyer to discuss separation plans.  The victim also had plans to live with her parents.  Other Commonwealth witnesses testified that the victim did not exhibit suicidal tendencies because she continued to make plans for the future, even until the day before her death.

Further, the forensic evidence suggested that the victim did not commit suicide.  Investigator Charles Bryant testified that the victim was wearing a glove on the hand with which she allegedly fired the gun.  Bryant stated that the glove "was not completely on her hand as someone would normally wear a glove." The glove contained no gunshot residue.  A gun was found two

4

feet, four inches from the victim's outstretched right hand, and five feet, four inches from the head wound. Bruce, who allegedly found the victim's body, told Bryant that he may have kicked the gun. No fingerprints were recovered from the gun, the victim's eyeglasses, or papers found in the victim's lap. No suicide note was found.

Dr. Marcella Fierro, a pathologist, testified that the bullet travelled right to left, back and down, starting at the victim's right temple and stopping behind her left ear. Furthermore, Dr. Fierro stated that when she attempted to reconstruct the positioning of the shooting, she was unable to position the gun such that the bullet would have travelled along that path.

Ann Jones, a firearms expert and a woman of roughly the same size as the victim, testified that she attempted to replicate the crime scene. Jones had trouble firing the gun while wearing the glove, and she was unable to shake the gun off of her hand while wearing the glove loosely as the victim wore it.

Moreover, from the evidence presented, the jury could have inferred a motive for Bruce to take the victim's life. Constance Pepper, a life insurance agent, testified that on March 19, 1991, Bruce had changed his wife's life insurance policy so that he was the sole beneficiary of the policy. Ed Meeks, Bruce's court-appointed counsel in another matter, testified that appellant was in desperate need for money. Meeks stated that Bruce was facing a possible twenty-year prison sentence if he failed to make

5

court-ordered restitution by mid-December 1991. Meeks testified Bruce had written Meeks that Bruce was willing to do almost anything to avoid going to jail. Bruce had forfeited his license to practice law and had stated that his only source of money was his mother's annuity fund.

Charles Lindsay and Robert Taylor testified that Bruce knew where Taylor kept the gun that was stolen from Taylor's truck and was used to kill the victim. Taylor also testified that the victim had never ridden in the truck in which the gun was kept.

Bruce presented evidence from a psychiatrist, who examined the victim's medical records and testified that the victim's behavior was consistent with a pattern of potential suicidal behavior. In addition, Dr. Robert Sinnenburg testified on behalf of Bruce. Dr. Sinnenburg stated that the victim's wound was "absolutely consistent" with a self-inflicted gunshot wound.

Although appellant offered alibi evidence concerning his activities on December 11, 1991, the jury had "a right to weigh the testimony of all the witnesses, experts and otherwise." Hill v. Commonwealth, 8 Va. App. 60, 64, 379 S.E.2d 134, 137 (1989) (en banc). The jury believed the testimony of the Commonwealth's witnesses. The testimony of the Commonwealth's witnesses was competent and was not inherently incredible. From the Commonwealth's evidence, the fact finder could have inferred that appellant killed the victim and attempted to make her death look like a suicide. Accordingly, the evidence was sufficient to prove beyond a reasonable doubt that appellant committed first

6

degree murder.[1]

<u>The Motion To Set Aside the Verdict</u>

Bruce contends that the trial judge erred in admitting evidence that Bruce was a defendant in a criminal proceeding, that he had to make restitution in a matter for which he could have received a twenty-year prison sentence, and that Bruce had surrendered his license to practice law.

The Supreme Court has upheld admission of prior offenses when offered to prove "(1) premeditation, (2) absence of mistake or accident, (3) motive or intent, (4) and the conduct and feelings of the accused toward his victim." <u>Smith v. Commonwealth</u>, 239 Va. 243, 256, 389 S.E.2d 871, 878 (citations omitted), <u>cert. denied</u>, 498 U.S. 881 (1990). The evidence of Bruce's prior crimes was admissible to prove premeditation and motive. The probative value of the evidence outweighed any potential prejudice to Bruce. Therefore, the trial judge did not abuse his discretion in admitting the evidence.

Bruce asserts the trial judge erred in allowing the Commonwealth to "attack" the qualifications of Dr. Sinnenburg after the Commonwealth previously stipulated to his qualifications. However, the Commonwealth did not attack Dr. Sinnenburg's qualifications by indicating that Dr. Sinnenburg was

---

[1] We will not consider the jury instruction issues since no appeal was granted by this Court on these issues. <u>See</u> Rule 5A:12(c). For the same reason, we will not consider the assertion that the trial judge erred in failing to grant a change of venue.

not board-certified in forensic pathology.  Rather, on rebuttal,
the Commonwealth attempted to impeach the credibility of Dr.
Sinnenburg by showing that he was not board-certified in forensic
pathology.  Therefore, the trial judge did not err in admitting
the evidence.

Dr. Fierro testified that three of the several thousand
autopsies she had performed involved a gloved person who had
committed suicide.  On appeal, Bruce contends that this testimony
was irrelevant and prejudicial.  However, the evidence
established Dr. Fierro's experience with similar cases.
Therefore, it was relevant evidence.  See Evans-Smith v.
Commonwealth, 5 Va. App. 188, 196, 361 S.E.2d 436, 441 (1987).

### The Motions for a Mistrial

"Whether to grant a mistrial rests within the discretion of
the trial judge, and his or her decision may not be overturned
unless a manifest probability exists that the denial of a
mistrial was prejudicial."  Hall v. Commonwealth, 14 Va. App.
892, 902, 421 S.E.2d 455, 462 (1992) (citation omitted).

> Under principles established in Brady v.
> Maryland, 373 U.S. 83 (1963), the
> Commonwealth must turn over evidence
> favorable to an accused that is material to
> either guilt or punishment.  Id. at 87.  In
> United States v. Bagley, 473 U.S. 667 (1985),
> the Court set forth the test for materiality,
> finding that evidence is material, "only if
> there is a reasonable probability that, had
> the evidence been disclosed to the defense,
> the result of the proceeding would have been
> different."  Id. at 682.

* * * * * * *

"A defendant cannot simply allege the

8

> presence of favorable material and win reversal of his conviction." <u>United States v. Balliviero</u>, 708 F.2d 934, 943 (5th Cir. 1983)[, <u>cert.</u> <u>denied</u>, 464 U.S. 939 (1983)]. Rather, a defendant must prove the favorable character of evidence he claims has been improperly suppressed. Speculative allegations are not adequate. <u>See</u> <u>United States v. Barshov</u>, 733 F.2d 842, 848 (11th Cir. 1984), <u>cert.</u> <u>denied</u>, 469 U.S. 1158 (1985). <u>See</u> <u>also</u> <u>Black v. Collins</u>, 962 F.2d 394, 406-07 (5th Cir.), <u>cert.</u> <u>denied</u>, 504 U.S 992 (1992).

<u>Hughes v. Commonwealth</u>, 18 Va. App. 510, 525-26, 446 S.E.2d 451, 460-61 (1994).

Appellant moved for a mistrial, asserting that the Commonwealth failed to disclose an audio tape containing a police interview of Don Williams in which Williams described a conversation that he had with the victim on the day of her death. On the tape, Williams said the victim was crying and was "real depressed and she felt she didn't have anything . . . to live for." Appellant claims that because this evidence supported his defense that the victim was depressed and suicidal, the tape provided exculpatory information which would have assisted appellant in the preparation of his expert witness. Appellant also asserts that the tape would have assisted him in the preparation of the cross-examination of the Commonwealth's expert witness, who testified that the victim had a positive attitude prior to her death.

Appellant had full access to Williams prior to the trial and even called Williams to testify on behalf of appellant. During appellant's direct examination of Williams, Williams testified

9

concerning the same observations made on the tape recording --
that the victim appeared to be depressed on the day she died.
The jury heard this evidence, considered it in conjunction with
all of the evidence in the case, and found that appellant
murdered the victim.

Further, appellant has not shown that a reasonable
probability exists that the tape's disclosure would have resulted
in a different outcome.  Bagley, 473 U.S. at 683.  The victim's
own psychologist testified the victim did not exhibit suicidal
thoughts and was looking forward to "moving on" with her life.
Several other witnesses testified the victim did not exhibit
suicidal tendencies and was planning for the future, even up
until the time of her death.  Moreover, Williams also said on the
tape that, during his conversation with the victim, the victim
did not indicate she intended to take her own life, and the
victim said she "was trying to leave town and go stay with some
relatives or take a new job."  In addition, the scientific
evidence did not support the suicide theory, and the Commonwealth
presented evidence of a motive for appellant to kill his wife.

Accordingly, in light of all of the evidence, we cannot find
a reasonable probability that the disclosure of the taped
conversation would have produced a different outcome.  Therefore,
the trial judge did not abuse his discretion in denying
appellant's motion for a mistrial on this basis.

Appellant also made a post-trial motion for a mistrial based
upon the post-trial affidavit of another defense witness, Joyce

10

Edelen. In her affidavit, Edelen stated that, on the day the victim died, the victim told Edelen, "I am losing my mind." At the trial, Edelen did not testify that the victim made this statement. However, after Edelen testified, she informed the Assistant Commonwealth's Attorney that she then recalled the victim had made the statement. Appellant alleges that the Commonwealth was then obligated to disclose the information to appellant because it was exculpatory evidence and was crucial to appellant's expert witnesses' testimony because it supported the theory that the victim committed suicide.

As in the case with Williams, appellant had full access to Edelen prior to trial, and appellant called Edelen to testify on behalf of appellant. Further, it is speculative that the victim's statement, "I am losing my mind" was necessarily favorable to appellant and tended to support appellant's suicide theory. Moreover, for the same reasons as stated in the discussion of the Williams' taped interview, in view of the other evidence presented, appellant has not shown that a reasonable probability exists that the statement's disclosure would have resulted in a different outcome. See id. There was ample evidence from which the jury could have inferred beyond a reasonable doubt that appellant murdered his wife. Therefore, the trial judge did not abuse his discretion in denying the post-trial motion for a mistrial.

For the reasons stated, we conclude that the evidence was sufficient to prove beyond a reasonable doubt that Bruce

11

committed first-degree murder and used a firearm in the commission of the murder.  Accordingly, the judgment of the trial court is affirmed.

<u>Affirmed</u>.
