**Maurice ANDREWS, Petitioner,**

v.

**James A. COLLINS, Director, Texas Department of Criminal Justice, Institutional Division, Respondent.**

**No. 6:92–CV–509.**

United States District Court,
E.D. Texas,
Tyler Division.

Dec. 1, 1992.

David Charles Holmes, Honigman, Miller, Schwartz & Cohn, Thomas H. Wilson and Margaret C. Ling, Vinson & Elkins, Houston, TX, for petitioner.

Stephanie A. Stelmach, Asst. Atty. Gen., Criminal Law Enforcement Div., Austin, TX, for respondent.

## MEMORANDUM OPINION

HALL, District Judge.

Petitioner, Maurice Andrews, was convicted of capital murder and sentenced to death pursuant to the judgment of the 252nd Judicial Court of Jefferson County, Texas, entered on October 21, 1982. Mr. Andrews seeks habeas corpus relief pursuant to 28 U.S.C. § 2254 and petitions this Court to review the constitutionality of his conviction and sentence. On August 17, 1992, this Court granted Mr. Andrews a stay of execution for an indefinite time in order for the Court to thoroughly review the more than 2,000 pages of testimony, pleadings and motions filed by Petitioner less than two weeks prior to his scheduled date of execution. Respondent filed a Response and Motion for Summary Judgment on September 24, 1992. Mr. Andrews requested and was granted an extension of time in which to respond to the Motion for Summary Judgment. Mr. Andrews timely filed his Response. In addition, Mr. Andrews filed a Notice of Supplemental Authority on November 17, 1992.

After having carefully examined the pleadings, briefs and state court record, the Court concludes that the petition for the writ of habeas corpus is without merit and will be denied. Furthermore, the Court will grant Respondent's motion for summary judgment and will vacate the stay of execution previously granted.

## BACKGROUND AND PROCEDURAL HISTORY

Mr. Andrews was convicted by a jury of the capital murder of Joe Angel Granado during the course of the robbery of Granado's Jewelry Store in Beaumont, Texas on April 8, 1982. An employee of the store, Arturo Melindez, was also murdered. After the jury affirmatively answered the special issues submitted to it pursuant to Article 37.071, Tex.Code Crim.P.Ann. (Vernon 1981)[1], the trial judge assessed the punishment at death. The facts of the crime are recounted in the opinion of the Texas Court of Criminal Appeals, which affirmed the conviction and sentence on direct appeal on September 23, 1987. *Andrews v. State*, 744 S.W.2d 40 (Tex.Crim. App.1987). The United States Supreme Court denied certiorari on October 3, 1988. *Andrews v. Texas*, 488 U.S. 871, 109 S.Ct. 182, 102 L.Ed.2d 151 (1988). The Supreme Court denied Mr. Andrews' petition for rehearing on November 28, 1988. *Andrews v. Texas*, 488 U.S. 976, 109 S.Ct. 518, 102 L.Ed.2d 552 (1988).

After his direct appeal proved futile and his petitions for writ of certiorari and rehearing to the United States Supreme Court were denied, Mr. Andrews filed an application for writ of habeas corpus raising thirty-seven claims in the state district court on November 28, 1988. The state district court denied the petition and motion for stay of execution on December 5, 1988. The Texas Court of Criminal Appeals remanded for an evidentiary hearing on December 6, 1988. *Ex parte Andrews*, No. 19,564 (Tex.Crim.App., Dec. 6, 1988) (unpublished order). The trial court then conducted a two-day evidentiary hearing on six of Mr. Andrews' claims. The trial court

---

**1.** Art. 37.071. Procedure in capital case:

(a) Upon finding that the defendant is guilty of a capital offense, the court shall conduct a separate sentencing proceeding to determine whether the defendant shall be sentenced to death or life imprisonment ...

(b) On conclusion of the presentation of the evidence, the court shall submit the following three issues to the jury:

(1) whether the conduct of the defendant that caused the death of the deceased was committed deliberately and with the reasonable expectation that the death of the deceased or another would result;

(2) whether there is a probability that the defendant would commit criminal acts of violence that would constitute a continuing threat to society; and

(3) if raised by the evidence, whether the conduct of the defendant in killing the deceased was reasonable in response to the provocation if any, by the deceased.

　　·　　　·　　　·　　　·

(e) If the jury returns an affirmative finding on each issue submitted under this article, the court shall sentence the defendant to death. If the jury returns a negative finding on or is unable to answer any issue submitted under this article, the court shall sentence the defendant to confinement in the Texas Department of Corrections for life.

made findings of fact and conclusions of law and denied relief. *Ex parte Andrews,* No. 19,564, Findings of Fact and Conclusions of Law (May 17, 1989). On June 24, 1992, the Texas Court of Criminal Appeals denied relief and lifted the stay of execution on the basis of the trial court's findings and conclusions. *Ex parte Andrews,* No. 19,564 (Tex.Crim.App., June 24, 1992) (unpublished order). The state district court then scheduled Mr. Andrews' execution for August 26, 1992. *State v. Andrews,* Trial Court No. 41403, Execution Order (252nd Dist. Ct., Jefferson Co., July 1, 1992).

On August 10, 1992, Mr. Andrews filed a petition for a writ of certiorari in the United States Supreme Court seeking review of the judgment of the Texas Court of Criminal Appeals in Mr. Andrews' state habeas petition. *Andrews v. Texas,* No. 92–5456 (U.S. petition for cert. filed Aug. 10, 1992). On October 13, 1992, the Supreme Court again denied Mr. Andrews' petition for a writ of certiorari. *Andrews v. Texas,* —— U.S. ——, 113 S.Ct. 335, 121 L.Ed.2d 253 (1992).

In the interim period between Mr. Andrews' filing his certiorari petition with the Supreme Court and the Supreme Court's subsequent denial, Mr. Andrews filed his first federal petition for a writ of habeas corpus relief with this Court on August 14, 1992, less than two weeks before his scheduled execution date. Mr. Andrews' petition raised twenty-seven claims, all of which had been presented to the state district court and the Texas Court of Criminal Appeals. As previously stated, this Court granted Mr. Andrews an indefinite stay of execution so that the Court could thoroughly review the multitude of documents accompanying the petition.

## CLAIMS FOR RELIEF

As indicated by the procedural history of this case, Mr. Andrews' claims have been reviewed on several occasions by the state district court, the Texas Court of Criminal Appeals and the United States Supreme Court. Mr. Andrews now asks this Court to once again review his numerous claims for relief which are as follows:

1. The presence of juror Curtis Joseph Tomplait, a relative of the victim, denied Mr. Andrews due process, a fundamentally fair trial, trial by jury representative of the community and capable of bringing contemporary standards of decency to bear, and a reliable determination that death is the appropriate punishment.

2. At the time of his trial, Mr. Andrews suffered from severe psychiatric and drug-related impairments that rendered him incompetent to stand trial.

3. The Texas capital punishment procedure generally, and the jury instructions in this case specifically, precluded the jury from considering mitigating evidence as the basis for a sentence less than death.

4. The Texas capital punishment procedure precludes the jury from considering mitigating evidence as the basis for a sentence less than death; thus, the procedure discourages the discovery of and penalizes the use of mitigating evidence.

5. Trial counsel's failure to present mitigating evidence at trial denied Mr. Andrews the effective assistance of counsel.

6. The prosecution's use of peremptory challenges to excuse black jurors violated the Sixth, Eighth, Thirteenth and Fourteenth Amendments.

7. The prosecution's use of peremptory challenges to excuse jurors who expressed qualms about the death penalty denied Mr. Andrews due process, a fundamentally fair trial, trial by jury representative of the community and capable of bringing contemporary standards of decency to bear, and a reliable determination that death is the appropriate punishment.

8. The disqualification for cause of prospective jurors who opposed the

death penalty and of prospective jurors who were otherwise disqualified for cause removed a disproportionate number of black prospective jurors from the jury panel.

9. The trial court's rulings on challenges for cause by Mr. Andrews and the prosecution deprived Mr. Andrews of due process, a fundamentally fair trial, trial by jury representative of the community and capable of bringing contemporary standards of decency to bear, and a reliable determination that death is the appropriate punishment.

10. The publicity surrounding the crime, its investigation, the arrest of Mr. Andrews and his alleged accomplices, the pretrial proceedings, and the trial itself was so pervasive that it rendered the trial in Jefferson County, Texas, fundamentally unfair and deprived Mr. Andrews of a reliable determination of guilt and punishment.

11. The trial court incorrectly defined the prosecution's burden of proof.

12. The prosecution repeatedly commented about Mr. Andrews' failure to testify.

13. The prosecution's closing arguments included numerous improper statements that constituted prosecutorial misconduct.

14. The jury failed to expressly determine that Mr. Andrews killed, attempted to kill, intended that lethal force be used, or was a major participant in the crime who acted with reckless indifference to human life.

15. Dispositive terms in the Texas capital sentencing statute are ambiguous and were incorrectly defined by the prosecution.

16. The trial court committed numerous evidentiary errors.

17. The admission of illegally seized evidence deprived Mr. Andrews of his right to be free from unreasonable searches and seizures.

18. The testimony of Lena Granado, the victim's widow, was irrelevant and constituted fundamental error under state law.

19. The prosecution failed to disclose material evidence to the defense.

20. Evidence of unadjudicated prior offenses allegedly committed by Mr. Andrews was improperly introduced at the punishment stage.

21. The admission of evidence at the punishment stage concerning prior non-violent offenses allegedly committed by Mr. Andrews was fundamental error under state law and violated the Sixth, Eighth, and Fourteenth Amendments.

22. The admission of prior convictions for crimes committed when Mr. Andrews was seventeen years old was fundamental error under state law and violated the Eighth and Fourteenth Amendments.

23. The trial court improperly refused to submit the lesser included offenses of murder, robbery, and theft to the jury.

24. Mr. Andrews was denied access to an impartial psychiatrist.

25. Mr. Andrews is mentally retarded; therefore, the imposition of the death penalty in this case violates the Eighth and Fourteenth Amendments.

26. Mr. Andrews did not receive the effective assistance of counsel at trial.

27. Mr. Andrews did not receive the effective assistance of counsel on direct appeal.

## DISCUSSION

### I.

■ Mr. Andrews raises several claims which were determined to be procedurally barred in the state habeas court's Findings of Fact and Conclusions of Law which constitutes the last reasoned opinion in this cause. *See Ex parte Andrews*, No. 19,564, Findings of Fact and Conclusions of Law (May 17, 1989). Based on the Supreme

Court decision in *Ylst v. Nunnemaker*, ——
U.S. ——, ——, 111 S.Ct. 2590, 2596, 115
L.Ed.2d 706 (1991), this Court finds that it
is barred from federal review of those
claims determined to be procedurally de-
faulted unless Mr. Andrews establishes
"cause and prejudice" for his default under
*Murray v. Carrier*, 477 U.S. 478, 106 S.Ct.
2639, 91 L.Ed.2d 397 (1986).

The state habeas court found the follow-
ing claims, described in detail above, to be
procedurally barred: 6, 7,[2] 8, 11, 12, 13, 15,
16, 18, 20, 21 and 22.

After careful review of each of the above
claims, this Court finds that Mr. Andrews
is unable to establish cause and prejudice
for his default. Therefore, this Court de-
clines to discuss the merits of each of these
claims, and rests its denial of each claim of
the ground of procedural default by Mr.
Andrews.

## II.

■ Mr. Andrews claims that he was
denied due process and a fair trial by an
impartial jury of his peers because of the
presence of Curtis Joseph Tomplait, the
father of the widow of the victim's grand-
son, on the jury. Pet. at 12. Mr. Andrews
raised this identical claim in his state habe-
as petitions to the state district court, the
Texas Court of Criminal Appeals and the
United States Supreme Court, all of which
denied relief.

Mr. Andrews discovered the tenuous re-
lationship between Mr. Tomplait and the
victim after the conclusion of voir dire but
before the jury was empaneled. The state
informed the court and defense counsel
that it had discovered that Juror Tomplait
had "a daughter who is the widow of a
grandson of the victim," and that the
grandson had worked for the Jefferson
County Sheriff's Department. Tr. Vol. XI
at 1630.[3] Defense counsel then requested

that the trial court reopen voir dire to
determine whether the juror could be fair
and impartial, or alternatively, that the tri-
al court order a mistrial. *Id.* at 1631. The
trial court denied both requests on the
ground that the juror had qualified during
voir dire. *Id.* at 1633. The trial court
instructed defense counsel of Mr. Andrews'
legal right to develop any evidence of the
juror's violation of his oath in a motion for
new trial. *Id.*

The Sixth and Fourteenth Amendments
to the Constitution guarantee a criminal
defendant the right to an impartial jury.
*See Ristaino v. Ross*, 424 U.S. 589, 595 n.
6, 96 S.Ct. 1017, 1020 n. 6, 47 L.Ed.2d 258
(1976); *Irvin v. Dowd*, 366 U.S. 717, 721–
22, 81 S.Ct. 1639, 1642, 6 L.Ed.2d 751
(1961). However, after careful examina-
tion of all of the papers on file in this case,
the Court is unable to find any evidence of
bias or partiality on the part of Juror Tom-
plait.

During the general voir dire of the pro-
spective jurors, neither the prosecution nor
the defense asked the panel whether any-
one knew or was related to the victim al-
though the panel members were asked if
they knew any of the parties that the pros-
ecution had introduced including the trial
judge, the prosecutors, the defense counsel
and the defendant. Tr. Vol. I at 47–50.
The trial judge noted that even had Juror
Tomplait been asked if he was related to
the victim, he could conceivably had an-
swered in the negative due to the very
distant relationship *by marriage only* to a
*deceased* grandson of the victim. *See Ex
parte Andrews*, Findings of Fact and Con-
clusions of Law at 36 (May 17, 1989) (em-
phasis added). During individual voir dire
by the prosecution in answer to the ques-
tion, "Do you see any reason you could not
be a fair and impartial juror in the case?",

---

**2.** Interestingly, this identical claim was raised
and rejected in *Johnson v. McCotter*, 635 F.Supp.
685, 687 (E.D.Tex.1986) (Cobb, J.), based on the
decision in *Lockhart v. McCree*, 476 U.S. 162,
173–74, 106 S.Ct. 1758, 1765, 90 L.Ed.2d 137
(1986), which would also control the claim in
this case if it were not procedurally barred.
The petitioner Mr. Johnson was a codefendant

of Mr. Andrews and was indicted and convicted
of the capital murder of Joe Angel Granado.
*Andrews*, 744 S.W.2d at 41 n. 1.

**3.** "Tr." followed by a volume number and page
number refers to the record of the trial proceed-
ings.

Mr. Tomplait answered, "No, sir." Tr. Vol. X at 1614.

Other than Mr. Andrews' bare allegations that Juror Tomplait was biased, the Court finds nothing in the record to indicate any alleged bias. The Court further notes that the trial court judge was present during the entire voir dire and observed the credibility and demeanor of each juror; therefore, this Court accords deference to the credibility choice made by the state court judge. *See Self v. Collins*, 973 F.2d 1198, 1213–14 (5th Cir.1992). Mr. Andrews' claim is, therefore, without merit.

## III.

■ Mr. Andrews next claims that he suffered from severe psychiatric and drug-related impairments that rendered him incompetent to stand trial. Pet. at 14. Mr. Andrews alleges that he exhibited sufficient warning signs that should have suggested the need for a competency hearing. Specifically, these warning signs include that he was "forced to withdraw from his drug addiction by going 'cold turkey;'" he had a "strong body odor;" he wrote a "rambling and cryptic letter" to his wife; and he wrote two notes to medical personnel. Pet. at 15–16.

■ If doubt regarding an accused's mental state is raised, the trial court must conduct an adequate inquiry as to the accused's competence. *Flugence v. Butler*, 848 F.2d 77, 79 (5th Cir.1988), *citing Pate v. Robinson*, 383 U.S. 375, 86 S.Ct. 836, 15 L.Ed.2d 815 (1966). "The test on collateral review is 'whether, in light of what was then known [by the state trial court], the failure to make further inquiry into [the defendant's] competence to stand trial, denied him a fair trial.'" *Flugence*, 848 F.2d at 79, *quoting Drope v. Missouri*, 420 U.S. 162, 174–75, 95 S.Ct. 896, 905, 43 L.Ed.2d 103 (1975). In asserting error in the failure to hold a competency hearing, the petitioner shoulders the burden of demonstrating that the objective facts known to the trial court were sufficient to raise a bona

fide doubt as to his competency. *Enriquez v. Procunier*, 752 F.2d 111 (5th Cir.1984).

■ In asserting a claim of actual incompetency to stand trial, as distinct from a trial court's failure to hold a competency hearing, the petitioner must set forth facts that "positively, unequivocally and clearly generate a real, substantial and legitimate doubt as to the mental capacity of the petitioner...." *Id.* at 114, *quoting Bruce v. Estelle*, 483 F.2d 1031, 1043 (5th Cir. 1973), *subsequent opinion*, 536 F.2d 1051 (5th Cir.1976).

■ During the two-day evidentiary hearing, the state court found that there was no evidence observed by the court or brought to the court's attention to warrant a competency hearing. *Ex parte Andrews*, Findings of Fact and Conclusions of Law at 5–6 (May 17, 1989). Furthermore, the state court found that there was no evidence that the petitioner was incompetent at the time of trial. *Id.* Pursuant to 28 U.S.C. § 2254(d), a state court's explicit and implicit findings of fact are entitled to a presumption of correctness if supported by the record. *Loyd v. Smith*, 899 F.2d 1416, 1425 (5th Cir.1990).

The state court found that Andrews' trial attorneys "never saw or observed any sign of any question as to competency or mental retardation." *Ex parte Andrews*, Findings of Fact and Conclusions of Law at 24 (May 17, 1989). At the state evidentiary hearing, counsel testified that he had approximately 30–35 conversations with his client Mr. Andrews and that counsel never suspected any problems regarding competency or drug abuse. EH Vol. I at 149–150, 172.[4] Although counsel recalled an instance in which Mr. Andrews had body odor, he did not interpret that as any indication of any "mental deficiency." *Id.* at 152. Counsel further testified that he explained the proceedings to Mr. Andrews and that Mr. Andrews "knew what was going on." *Id.* at 171.

In regard to the letter that Mr. Andrews wrote to his wife, the Court finds Mr. An-

---

**4.** "EH" refers to the testimony from the evidentiary hearing held by the state district court on

February 8–9, 1989, on the order of the Texas Court of Criminal Appeals.

drews' claim that the letter was a "warning sign" unpersuasive. In that letter, Mr. Andrews (1) informs his wife that she has something in the yard that "glows" and that they will be worth $50,000 when he "get[s] out;" (2) instructs her not to tell anyone about the diamonds; (3) requests their wedding picture; and (4) mentions that he has never been to Las Vegas. *See* Tr. Vol. XIV, Exhibit Packet, State's Exhibit 88. Despite Mr. Andrews' assertion that this letter is "rambling and cryptic" and "suggests both mental disturbance and low intelligence," the Court finds that one could logically infer that the letter instructed Mr. Andrews' wife where the fruits of the crime were located and informed her not to tell anyone. Furthermore, one could draw a logical inference that Mr. Andrews' reference to Las Vegas was an indication of a way in which they could spend the $50,000 when he was released from jail. The Court finds nothing about this letter that would signal incompetence or mental disturbance.

The Court concludes that the state court's finding that no evidence was raised to require a competency hearing is amply supported by the record. Based on the same evidence discussed above, the Court also concludes that the state court's finding that Mr. Andrews was competent to stand trial is amply supported by the record. Consequently, the Court finds that Mr. Andrews' second claim is without merit.

### IV.

■ Mr. Andrews next raises the claim that the Texas capital punishment procedure generally, and the jury instructions in this case specifically, did not allow the jury to consider mitigating evidence for a sentence less than death. Mr. Andrews relies on the abovementioned letter to his wife to show affection for his family, his low intelligence and mental problems and testimony from one witness who stated that Mr. Andrews used drugs as evidence that might have had a possible mitigating effect. Pet. at 18. However, the Court notes that this evidence was not offered in mitigation at trial, and any potential mitigating effect is speculative.

In *Penry v. Lynaugh*, 492 U.S. 302, 109 S.Ct. 2934, 106 L.Ed.2d 256 (1989), the Supreme Court held that, where a capital defendant introduces evidence about his background, character, or circumstances of the offense that reflects a reduced personal culpability and the jury is unable to give effect to the mitigating force of that evidence in responding to the Texas statutory punishment issues, the trial court must, upon request, provide instructions which allow the jury to consider and give mitigating effect to such evidence. *Id.* at 318–28, 109 S.Ct. at 2947–52. On the other hand, if the jury is able to consider and give effect to the mitigating aspect of the proffered evidence in answering the punishment questions, the fact that no additional instructions or vehicles are available does not violate the Eighth Amendment. *See Boyde v. California*, 494 U.S. 370, 382 n. 5, 110 S.Ct. 1190, 1199 n. 5, 108 L.Ed.2d 316 (1990); *Penry*, 492 U.S. at 320, 109 S.Ct. at 2948 (no Eighth Amendment violation in *Franklin v. Lynaugh*, 487 U.S. 164, 108 S.Ct. 2320, 101 L.Ed.2d 155 (1988), because the jury could give effect to the mitigating force of the evidence of the defendant's good prison behavior in answering the second special issue); *Graham v. Collins*, 950 F.2d 1009, 1027 (5th Cir.1992) (en banc), *cert. granted,* —— U.S. ——, 112 S.Ct. 2937, 119 L.Ed.2d 563 (1992) (holding that evidence of relative youth and other character evidence are adequately covered by the second special issue).

Based upon *Graham v. Collins*, which governs this Court's decision, the Court concludes that the special punishment issues submitted to the jury sufficiently encompass the evidence that Mr. Andrews asserts would have had a mitigating effect had it been introduced. Therefore, this claim is without merit.

### V.

■ Mr. Andrews claims that the Texas capital punishment procedure discourages the discovery of and use of mitigating evidence. Mr. Andrews points to certain evidence about his background which he contends should have been admitted at trial. Pet. at 22–26. Because counsel felt that

such evidence would do more harm than good, they decided not to introduce any of it.

In *May v. Collins*, 904 F.2d 228, 231 (5th Cir.1990), *cert. denied*, ―― U.S. ――, 111 S.Ct. 770, 112 L.Ed.2d 789 (1991), the petitioner, in his state habeas proceeding introduced evidence that his mother had a difficult pregnancy, that his father beat him, and that he was an alcoholic. In federal habeas, the petitioner argued that the Texas sentencing scheme effectively precluded him from introducing this evidence at trial. The Fifth Circuit held that this was admissible under Texas law and that counsel had made a tactical decision not to introduce it. *Id.* at 232; *see also May v. Collins*, 948 F.2d 162 (5th Cir.1991) (claim counsel "chilled" from presenting mitigating evidence unavailable whether brought under Sixth or Eighth Amendment), *cert. denied*, ―― U.S. ――, 112 S.Ct. 907, 116 L.Ed.2d 808 (1992).

The Court finds that Mr. Andrews' claim is no different from the claim in *May*, and he is not entitled to relief on this claim.

## VI.

■■■ Mr. Andrews alleges that his trial counsel's failure to present any mitigating evidence at trial denied him the effective assistance of counsel. Mr. Andrews asserts that the jury should have been presented *inter alia* evidence of his clean prison record, his mental retardation, his family background and his drug abuse. Pet. at 30.

Mr. Andrews must show that his counsel's performance was unreasonable as of the time of counsel's conduct and that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

The state court found that counsel's failure to present any mitigating evidence did not constitute ineffective assistance of counsel and was consistent with the overall trial strategy that Mr. Andrews was not the "triggerman." *Ex parte Andrews*, No.

19,564, Findings of Fact and Conclusions of Law at 17–20 (May 17, 1989). This Court accords the state court's subsidiary factual findings a presumption of correctness. *Black v. Collins*, 962 F.2d 394, 401 (5th Cir.1992).

This Court concludes that the failure to present this evidence did not prejudice Mr. Andrews. In fact, had much of it been presented, it would possibly have only hastened the same result. For instance, Mr. Andrews argues that his prison record should have been introduced on the issue of his future dangerousness. However, this prison record indicated that Mr. Andrews was the subject of a disciplinary report in 1978 for unauthorized absence from his assigned area. *See* EH, Pet'r Ex. C. In addition, Mr. Andrews had been considered an "escape risk" at one time. *Id.* Mr. Andrews claims that his counsel should have admitted evidence of his drug use. Pet. at 30. While his drug use may have had some mitigating effect, it is more likely that evidence of drug use would have been damaging to Mr. Andrews.

Clearly, the purported mitigating evidence that Mr. Andrews argues should have been offered is a double-edged sword that his counsel strategically determined was more harmful than helpful. The Court finds that the performance of Mr. Andrews' counsel was neither unreasonable nor prejudicial; therefore, the Court determines that this claim is without merit.

## VII.

Mr. Andrews contends that the trial court's rulings on challenges for cause by Mr. Andrews violated his constitutional rights. Specifically, Mr. Andrews faults the trial court's overruling Mr. Andrews' challenges for cause to prospective jurors David Malcom Simon and Jerry Pat Sessions and the trial court's granting the prosecution's challenges for cause to prospective jurors Anthony Wayne Crook and Frank James Landry. Pet. at 38.

■■■ In *Wainwright v. Witt*, 469 U.S. 412, 424, 105 S.Ct. 844, 852, 83 L.Ed.2d 841 (1985), the Supreme Court defined the prop-

er standard for determining when a prospective juror may be excluded for cause because of his views on capital punishment as "whether the juror's views would 'prevent or substantially impair the performance of his duties as a juror in accordance with his instructions and his oath.'" The trial court is in the best position to rule on a prospective juror's qualification because the court views the juror's demeanor and credibility, and as here, participates in the voir dire examination to clarify any ambiguities. Therefore, *Witt* mandates that such factual determinations of juror bias or lack thereof which cannot be easily discerned from the record are subject to a presumption of correctness under 28 U.S.C. § 2254(d). 469 U.S. at 429, 105 S.Ct. at 854.

■ Venireman Simon stated during voir dire that he felt that a non-shooter as opposed to a shooter was equally criminally responsible. Tr. Vol. III at 62. Prior to that statement, Mr. Simon said that he "thought that the law was that if he was with the other members he was still guilty." *Id.* at 61. Apparently, Mr. Simon was unclear about the law of parties, and the defense did not make the law clear to him. *See Andrews*, 744 S.W.2d at 50. Despite his confusion, he answered that he could set aside any his personal feelings and follow the law given him. Tr. Vol. III at 63–64. The prosecution then offered to accept Mr. Simon; thereafter, the defense exercised a peremptory challenge. There is sufficient support in the record for the trial court's failure to excuse Mr. Simon for cause; therefore, this Court accords a presumption of correctness to the trial court's finding.

■ Mr. Andrews states that "Jerry Pat Sessions made it clear that he would always vote for the death penalty in a murder case." Pet. at 40. After an examination of the voir dire questioning, the Court notes that Mr. Sessions initially stated that he felt that a person who kills another and is proven guilty should be sentenced to death. Tr. Vol. IV at 390. However, later in the questioning after an explanation of the sentencing procedure, Mr.

Sessions stated that he could set aside his personal feelings and apply the law even though doing so could result in a sentence of less than death. *Id.* at 417. After the trial court denied Mr. Andrew's challenge for cause, Mr. Andrews exercised a peremptory challenge and excused Mr. Sessions. The trial court was clearly in a better position to judge Mr. Sessions' credibility and demeanor. Furthermore, there is support in the record for the trial court's finding; therefore, the Court accords the finding a presumption of correctness.

■ Mr. Andrews also contends that trial court erred in excusing Anthony Wayne Crook and Frank James Landry for cause. In answer to questions from the prosecution as to whether he could consider imposing probation as the sentence in a murder case, Mr. Crook responded that he could not. Tr. Vol. V at 610–11. The prosecution may challenge a prospective juror for cause if he has a bias or prejudice against any phase of the law upon which the prosecution is entitled to rely for conviction or punishment. *See* Tex.Code Crim. P.Ann. art. 35.16(b)(3) (Vernon Supp.1992). During voir dire, it was not certain whether the trial court was going to give the jury instructions on capital murder only or a lesser included offense of murder or robbery. Probation is a sentencing option for murder, and Mr. Crook stated that he could never impose probation in a murder case. Therefore, the trial court properly excluded Mr. Crook.

■ As to venireman Landry, there is ample support in the record for the trial court's excusal for cause. Mr. Landry expressed strong opposition to the death penalty throughout voir dire. Tr. Vol. V at 548–51, 557, 566–67, 571. Mr. Landry stated that he could not follow the oath required of jurors. *Id.* at 557, 565, 571. He also stated several times that he would always answer one of the special sentencing issues "no" in order to prevent the trial court from assessing the death penalty. *Id.* at 554–55, 560–61, 565, 570. Therefore, the trial court properly excluded Mr. Landry.

As to Mr. Andrews' claims regarding the trial court's rulings on the above prospective jurors, the Court finds that the trial court's findings are amply supported by the record and are entitled to a presumption of correctness.

## VIII.

■ Mr. Andrews claims that his trial in Jefferson County, Texas was rendered fundamentally unfair and was a deprivation of his right to a reliable determination of guilt and punishment due to pervasive publicity surrounding the crime and trial. Mr. Andrews claims that the trial court erred in denying his motion for a change of venue. Pet. at 43–46.

■ Although juror exposure to adverse publicity may infringe upon a defendant's right to an impartial decisionmaker, the Constitution does not require that jurors be completely unaware of the facts and issues to be tried. *Dobbert v. Florida,* 432 U.S. 282, 302, 97 S.Ct. 2290, 2302, 53 L.Ed.2d 344 (1977); *Murphy v. Florida,* 421 U.S. 794, 799–800, 95 S.Ct. 2031, 2036, 44 L.Ed.2d 589 (1975). Even extensive knowledge about the crime or the accused is not by itself sufficient to establish a constitutional violation. *See Patton v. Yount,* 467 U.S. 1025, 1032–34, 104 S.Ct. 2885, 2889–90, 81 L.Ed.2d 847 (1984); *Dobbert,* 432 U.S. at 303, 97 S.Ct. at 2303.

Based on the testimony at the venue hearing, the trial court denied Mr. Andrews' motion for a change of venue. However, the trial court noted that it would continue the motion during the jury selection process and change the venue if it developed that Mr. Andrews could not receive a fair trial. Tr. Vol. II at 54.

The publicity concerning the offense was largely factual, and the subsequent voir dire proceedings uncovered no deep or widespread prejudice against Mr. Andrews. The Court finds that the record demonstrates that his right to a fair trial was not abridged and that there is adequate support in the record for the trial court's denial of Mr. Andrews' motion for change of venue.

## IX.

■ Mr. Andrews claims that the jury failed to expressly determine that he killed, intended to kill, intended that legal force be used, or was a major participant in the crime who acted with reckless indifference to human life thereby rendering the death penalty arbitrary and capricious.

In *Enmund v. Florida,* 458 U.S. 782, 798–801, 102 S.Ct. 3368, 3377–78, 73 L.Ed.2d 1140 (1982), the Supreme Court held that the Eighth Amendment prohibits imposition of a death sentence on an accused where the sentencing body focused on the culpability of the accused's confederates, rather than on that of the accused himself. In *Cabana v. Bullock,* 474 U.S. 376, 106 S.Ct. 689, 88 L.Ed.2d 704 (1986), the Court expressly held that the concerns in *Enmund* were not involved where there had been a determination that the defendant had personally killed, attempted to kill, or intended that lethal force be used. *See also Tison v. Arizona,* 481 U.S. 137, 107 S.Ct. 1676, 95 L.Ed.2d 127 (1987).

The *Cabana* court further held that at some point either in the trial court proceedings or upon review, the state court must make the factual determination that the defendant possessed the culpability necessary for imposition of the death penalty. 474 U.S. at 386–87, 106 S.Ct. at 697. Under the Texas capital sentencing statute, this determination is made by the jury when it decides the first punishment issue of "whether the conduct of the defendant that caused the death of the deceased was committed deliberately and with the reasonable expectation that the death of the deceased or another would result." Tex.Code Crim. P. Ann. art. 37.071(b)(1) (Vernon 1981); *Green v. State,* 682 S.W.2d 271, 286–87 (Tex.Crim.App.1984); *Meanes v. State,* 668 S.W.2d 366, 375 (Tex.Crim.App.1983). The jury in this case affirmatively answered the first punishment issue and, thereby, made the required determination under *Enmund.* Therefore, Mr. Andrews' claim is without merit.

## X.

■ Mr. Andrews next contends that the admission of illegally seized evidence

violated his Fourth Amendment rights. Mr. Andrews points to the admission of a necklace stolen from Granado's Jewelry Shop that Mr. Andrews was wearing when arrested, an allegedly stolen check found in his wallet, and additional stolen jewelry found at his home. Pet. at 85–89. Mr. Andrews also contends that other illegally seized evidence in the form of a cigar box and empty coin wrappers was used to corroborate testimony at trial. Mr. Andrews further alleges that the state trial court erroneously denied his objections to the admission of the evidence. Pet. at 88.

■ As to Mr. Andrews' charge that the trial court's ruling was not in accordance with Texas law, such an allegation does not rise to a federal constitutional violation, and, therefore, is not cognizable in a federal habeas proceeding. *See Smith v. Phillips*, 455 U.S. 209, 221, 102 S.Ct. 940, 948, 71 L.Ed.2d 78 (1982).

■ Furthermore, Fourth Amendment claims under the exclusionary rule may not be presented on federal habeas if there was "an opportunity for full and fair litigation" of the Fourth Amendment claim in state court. *Stone v. Powell*, 428 U.S. 465, 497, 96 S.Ct. 3037, 3053, 49 L.Ed.2d 1067 (1976). In regard to Mr. Andrews' Fourth Amendment claims, the state habeas court found that:

> it erred in ruling that applicant had waived the right to raise the issue because he had not raised it at the pre-trial hearing. See *Calloway v. State*, 743 S.W.2d 645, 649 (Tex.Crim.App.1988). However, trial counsel continued to pursue the issue with a motion for mistrial ([Tr.Vol.] XII—1928–29), which resulted in the bill of exceptions and evidence thereon which appears at pages 1–29 *following* page 2072 of [Tr.Vol.] XII. The evidence there developed demonstrates (and this court finds) that the arrest and search was not unlawful, and the question would have been without merit if raised on appeal, so that trial counsel justifiably decided not to pursue it any further.

*Ex parte Andrews*, No. 19,564, Findings of Fact and Conclusions of Law at 28 (May 17, 1989) (emphasis in original).

The state provided Mr. Andrews the opportunity for a full and fair litigation of his Fourth Amendment claims; therefore, this claim is not cognizable in this federal habeas proceeding and does not entitle him to relief.

## XI.

■ Mr. Andrews claims that the prosecution failed to disclose material evidence to the defense in violation of his constitutional rights. Specifically, he alleges that the prosecution failed to disclose the exculpatory testimony of three witnesses, Joy Moore, William Quimby and Nancy Verzone. Pet. at 91. He further alleges that the prosecution did not disclose prior statements of Ms. Luisa Morales that were inconsistent with her trial testimony. Pet. at 92. He also alleges that the prosecution failed to disclose its leverage on the following witnesses: Daisy Mae White, Gloria Mae Thomas, and Charles Chapman. Pet. at 92–93. Finally, he alleges that the prosecution failed to disclose statements by other witnesses, police reports and reports prepared by experts. Pet. at 93.

Not only did the prosecution provide the witnesses' names to the defense prior to trial, *see* State's Ex. 4, but at least two of those witnesses, Moore and Verzone, were contacted by Mr. Andrews' attorney. *See* EH Vol. I at 165. This is also reflected in the findings of fact made by the trial court and are entitled to a presumption of correctness in this proceeding. *See Ex parte Andrews*, No. 15,564, Findings of Fact and Conclusions of Law at 14 (May 17, 1989).

As to Mr. Andrews' claim concerning the inconsistent testimony of Luisa Morales, Morales' name was provided to Mr. Andrews and his attorney contacted her. *See* EH Vol. I at 165–66. Furthermore, Ms. Morales' alleged inconsistent statements were reported in two newspaper articles. Attachments B and C to Aff. of Lisa P. Haemisegger, Ex. 3 in Pet'r App. to Pet. Mr. Andrews has not shown that these statements were withheld by the state nor

that the evidence was material to his guilt as required by *Brady v. Maryland,* 373 U.S. 83, 87, 83 S.Ct. 1194, 1196, 10 L.Ed.2d 215 (1963); therefore, this claim fails.

With regard to the prosecution's alleged leverage on witnesses White, Thomas and Chapman, the state court found that Mr. Andrews "failed to offer any proof whatever that the state had any such 'leverage' or used any such 'leverage,' and the record does not show the existence or suppression of any such 'leverage.'" *Ex parte Andrews,* No. 15,564, Findings of Fact and Conclusions of Law at 15 (May 17, 1989). This Court accords the state court finding a presumption of correctness as Mr. Andrews has failed to offer any evidence of his claim of "leverage."

Finally, Mr. Andrews makes the conclusory allegations that various other exculpatory statements and reports were suppressed. The state court found that Mr. Andrews had failed to substantiate his claim. *Id.* Nor has Mr. Andrews provided this Court with any support for his bald assertions. Thus, this Court finds Mr. Andrews' claims to be without merit.

## XII.

■ Mr. Andrews claims that the trial court improperly refused to submit the lesser included offenses of murder, robbery, and theft to the jury. He contends that "a rational jury could have concluded that he did not kill Joe Granado and that he was not even involved in the actual robbery of Granado's Jewelry Shop." Pet. at 100. Mr. Andrews posits that "the jury could have concluded that [he] was part of a conspiracy to fence the jewelry that had already been stolen by others." Pet. at 100.

■ Texas follows the standard articulated in *Beck v. Alabama,* 447 U.S. 625, 100 S.Ct. 2382, 65 L.Ed.2d 392 (1980), requiring that an instruction on a lesser included offense must be given if there is some evidence in the record that if the defendant is guilty, he is guilty only of the lesser offense. *Royster v. State,* 622 S.W.2d 442, 446 (Tex.Crim.App.1981). The Fifth Circuit has recognized that the feder-

al trial standard and the *Beck* standard are equivalent. *See Lincecum v. Collins,* 958 F.2d 1271, 1275 (5th Cir.1992), *cert. denied,* — U.S. ——, 113 S.Ct. 417, 121 L.Ed.2d 340 (1992). On federal habeas review, a defendant is entitled to a lesser included offense instruction only "if the evidence would permit a jury rationally to find him guilty of the lesser offense and to acquit him of the greater." *Cantu v. Collins,* 967 F.2d 1006, 1013 (5th Cir.1992), *quoting Beck,* 447 U.S. at 635, 100 S.Ct. at 2388.

There was substantial evidence that Mr. Andrews was one of two men who entered and robbed Granado's Jewelry Shop and murdered Mr. Granado and Mr. Melindez. *See Andrews v. State,* 744 S.W.2d at 42–46. Mr. Andrews owned and was seen with the murder weapon immediately after the crime. Prior to the offense, Mr. Andrews indicated that he intended to commit a robbery and leave no witnesses. *Id.* at 45. Stolen jewelry was found on Mr. Andrews' person and in his home. *Id.* at 44–45. All of the evidence in the record indicates Mr. Andrews' guilt of capital murder and does not suggest a lesser offense. The Court does not find that a rational jury could have acquitted Mr. Andrews of capital murder but found him guilty of a lesser offense of murder, robbery, or theft. Therefore, the Court concludes that the instant claim fails.

## XIII.

■ Mr. Andrews next claims that he was denied access to an impartial psychiatrist. Mr. Andrews attributes his failure to request a psychiatrist to the fact that court-appointed psychiatrists "regularly gave negative evaluations and ... were unsympathetic to criminal defendants" and that the results were given to the prosecution. Pet. at 101.

Mr. Andrews cites *Ake v. Oklahoma,* 470 U.S. 68, 105 S.Ct. 1087, 84 L.Ed.2d 53 (1985), for the proposition that he was entitled to access to an impartial psychiatrist. In *Ake,* the Supreme Court held that appointment of a psychiatrist is required where "the defendant is able to make an *ex*

*parte* showing that his sanity is likely to be a significant factor in his defense." *Id.* at 82–83, 105 S.Ct. at 1096. In commenting on the standard in *Ake,* the Fifth Circuit stated that a defendant must, at a minimum, "make allegations supported by a factual showing that [his] sanity is in fact at issue in the case." *Volson v. Blackburn,* 794 F.2d 173, 176 (5th Cir.1986).

Mr. Andrews' sanity was never an issue in his trial. As indicated by the discussion in III above, there was no indication that Mr. Andrews was incompetent. Mr. Andrews has failed to make the threshold showing required by *Ake.* Therefore, the Court finds that Mr. Andrews is not entitled to relief on this claim.

### XIV.

▆ Mr. Andrews contends that he is mentally retarded and that the imposition of the death penalty on him, therefore, violates the Eighth and Fourteenth Amendments. Based on expert testimony and IQ records, the state court found and this Court accords deference to the finding that Mr. Andrews "could be in the very upper range of mild retardation but most likely fell in the borderline area between mild mental retardation and dull normal intelligence." *Ex parte Andrews,* No. 19,564, Findings of Fact and Conclusions of Law at 21–25 (May 17, 1989).

While Mr. Andrews apparently has below-average intelligence and could possibly be classified as mentally retarded, the Supreme Court has clearly rejected the claim that the Constitution precludes the execution of mentally retarded persons by virtue of their mental retardation alone. *Penry,* 492 U.S. at 339, 109 S.Ct. at 2958. The Court recognizes that the *Penry* court indicated that an emerging national consensus against the execution of retarded persons might change the *Penry* result in the future. *Id.* However, Mr. Andrews does not satisfy the Court of such a national consensus. Therefore, the Court finds Mr. Andrews' *Penry* claim to be without merit.

### XV.

▆ Mr. Andrews next claims that he did not receive effective assistance of counsel at trial. He faults his trial counsel for *inter alia* taking only limited discovery, for failing to adequately investigate the facts of the crime and the defenses, for failing to file a pretrial motion to suppress illegally seized evidence, for failing to properly object during voir dire and trial, and for failing to discover and introduce exculpatory evidence. Pet. at 105–116.

Mr. Andrews is not entitled to relief unless he can show both that his counsel's actions were unreasonable under prevailing standards and that his counsel's deficient performance prejudiced his defense. *Strickland,* 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674. In reviewing such claims, the Court's scrutiny must be highly deferential. *Id.* at 689, 104 S.Ct. at 2065.

Mr. Andrews raises a multitude of acts and failures to act by his counsel which he alleges constitute ineffective assistance of counsel. Based on careful examination of the testimony at trial and the evidentiary hearing, the Court determines that the state court's subsidiary fact findings on Mr. Andrews' ineffective trial assistance claim are entitled to a presumption of correctness. *Black,* 962 F.2d at 401. *See Ex parte Andrews,* No. 19,564, Findings of Fact and Conclusions of Law at 27–40 (May 17, 1989). However, the ultimate conclusion that counsel rendered effective assistance is a mixed question of law and fact for this Court's resolution. *Black,* 962 F.2d at 401. In the Court's opinion, Mr. Andrews is unable to show either deficient performance by counsel or prejudice.

Mr. Andrews asserts that his counsel failed to obtain complete discovery and conducted an inadequate investigation. The record of the evidentiary hearing on this claim supports the trial court's finding that the discovery and investigation was adequate. *See Ex parte Andrews,* No. 15,564, Findings of Fact and Conclusions of Law at 27 (May 17, 1989). Mr. Andrews' attorneys secured the services of Ed Martin, a former FBI agent, to conduct an investigation.

EH Vol. I at 161. Mr. Andrews' attorneys spoke directly with the prosecutor on several occasions and contacted twenty-seven witnesses. *Id.* at 161–168. Mr. Andrews' attorney stated that any witnesses not called to testify were not called for "a reason" and that they "just couldn't find anyone that was helpful." *Id.* at 168. Based upon an examination of the record, the Court is not persuaded that Mr. Andrews' attorneys failed to obtain complete discovery and failed to adequately investigate the crime.

As to Mr. Andrews' claim that his counsel failed to object to the admission of allegedly illegally seized evidence, the Court finds that Mr. Andrews has failed to carry his burden of proving that a successful objection would have, in reasonable probability, changed the outcome of the trial.

Mr. Andrews also claims that his counsel failed to make numerous objections during both voir dire and trial. Mr. Andrews raises a host of objections that he contends his counsel should have made. Based on an examination of counsel's overall performance, this Court is unpersuaded that the performance was unreasonable.

As to Mr. Andrews' contention that his counsel failed to uncover and introduce certain exculpatory evidence, the Court finds that Mr. Andrews has failed to prove that his attorneys' performance fell below a standard of reasonableness or resulted in prejudice.

Based on a careful examination of the complete record, the Court finds that Mr. Andrews' counsel's actions were not unreasonable under prevailing standards nor were counsel's alleged deficiencies prejudicial to his trial. Therefore, the Court finds that this claim is without merit.

## XVI.

Finally, Mr. Andrews claims that he did not receive the effective assistance of counsel on direct appeal. He contends that had his counsel raised the following points of error on appeal, his conviction and sentence would have been reversed: (1) the denial of a change of venue; (2) the denial of his challenge for cause of prospective juror Jerry Pat Sessions; (3) the disqualification for cause of prospective juror Anthony Wayne Crook; (4) the trial court's refusal to reopen voir dire of juror Curtis Tomplait; (5) the admission of hearsay statements in the testimony of Daisy Mae White; (6) the admission of illegally seized evidence; (7) the prosecution's improper closing arguments; (8) the trial court's refusal to submit the lesser included offenses to the jury; and (9) the introduction of evidence concerning unadjudicated prior offenses. Pet. 116–118. Mr. Andrews also faults his counsel for failing to raise other points of error under the fundamental error rule and for failing to raise new issues during the pendency of this case before the Texas Court of Criminal Appeals. Pet. at 118.

The Court judges the performance of counsel on appeal by the same standard as that applied to trial counsel. *Wicker v. McCotter*, 783 F.2d 487, 497 (5th Cir.1986), *cert. denied*, 478 U.S. 1010, 106 S.Ct. 3310, 92 L.Ed.2d 723 (1986). Based on the examination of all of the papers on file in this cause and the resolution of the points of error that Mr. Andrews claims should have been raised on direct appeal, the Court is unpersuaded that counsel's failure to raise these claims on direct appeal constituted ineffective assistance of counsel. Even had counsel raised these claims, the Court is unpersuaded that Mr. Andrews conviction and sentence would have been reversed. Therefore, the Court finds that this claim is without merit.

## CONCLUSION

For a period of ten years the Petitioner, Maurice Andrews, has used the judicial system of this country (both state and federal) in an effort to set aside his conviction for murder. He, through his attorneys, has at every stage of his habeas proceedings raised the nearly identical points of alleged error in seeking reversal. Every court that has reviewed these alleged "points of error" has denied his requests. Mr. Andrews continues to raise the same grounds of alleged error in the record to

seek a reversal. Again the Supreme Court, as late as October 13, 1992, denied his application for a writ of certiorari.

Now, he attempts to start over again in the federal system. Consumption of the court's resources must be utilized in a more productive way. Ten years is entirely too long to make a career of this case. Nothing new has been brought forward in Mr. Andrews' latest appeal to this Court, and the Court does not intend to belabor the point any further.

The Court finds no violation of Mr. Andrews' constitutional rights that would entitle him to the relief he seeks; therefore, this Court DENIES Mr. Andrews' Petition for a Writ of Habeas Corpus. The Court does hereby GRANT Respondent's Motion for Summary Judgment.

Further, the Court does hereby VACATE the previous Order Granting the Stay of Execution for an Indefinite Time.